*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONNIE ALLEN YOUNGER, JR.,

        Defendant-Appellant.

UNPUBLISHED
August 12, 2026
2:16 PM

No. 378285
Osceola Circuit Court
LC No. 2024-006318-FH

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

Defendant, Ronnie Allen Younger, Jr., stabbed the boyfriend of his daughter during an argument and pleaded no contest to felonious assault, MCL 750.82. The trial court, accepting Younger's representation that he was remorseful for his actions, sentenced him to 18 months' to 4 years' incarceration. As Younger exited the courtroom, he stated to his wife that the complainant "better be gone." This interaction was recorded on body-camera footage from a police officer, and it was given to the trial court. The trial court then sua sponte resentenced Younger a few days later to an increased minimum term of 24 months' incarceration, in part because Younger made an intemperate remark on his way out of the courthouse that the trial court took as a violation of a no-contact order to which Younger was subject and also as proof that Younger's remorse had been insincere. On appeal, Younger contends that the trial court was not authorized to resentence him and seeks reinstatement of his original sentence.[1] While we disagree that the trial court was unauthorized to resentence Younger, the trial court made several errors in crafting its revised sentence. Accordingly, we vacate Younger's sentence and remand for resentencing.

## I. RESENTENCING AUTHORITY

Younger argues that the trial court was not authorized to resentence him sua sponte because his original sentence was not invalid. We agree that the trial court's changed perception of

---

[1] Younger appeals the amended judgment of sentence by leave granted. *People v Younger Jr*, unpublished order of the Court of Appeals, entered January 8, 2026 (Docket No. 378285).

Younger's remorsefulness did not authorize it to resentence Younger sua sponte. But because the trial court crafted Younger's original sentence partly on the basis of a misapprehension as to his probation status, the trial court was authorized to resentence Younger to correct that misapprehension, and it was permitted to consider up-to-date information while crafting its revised sentence.

"[A] trial court cannot set aside a valid sentence and impose a new and different one, after the defendant has been remanded to jail to await the execution of the sentence." *People v Barfield*, 411 Mich 700, 703; 311 NW2d 724 (1981) (quotation marks and citation omitted). However, "[a]lthough the authority of the court over a defendant typically ends when a valid sentence is pronounced, the court may correct an invalid sentence after sentencing." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). "A sentence is invalid when it is beyond statutory limits, when it is based upon constitutionally impermissible grounds, improper assumptions of guilt, a misconception of law, or . . . if it is based on inaccurate information." *Id*. at 97. Under MCR 6.429(A), a trial court "may correct an invalid sentence on its own initiative after giving the parties . . . an opportunity to be heard . . . within 6 months of the entry of the judgment of conviction and sentence."

The trial court stated that it had based Younger's sentence on inaccurate information about Younger's remorsefulness. But while it would be an objective fact whether a defendant did or did not express remorse, a determination of whether a defendant *is* remorseful is a subjective assessment. *People v Daniel*, 462 Mich 1, 8 n 9; 609 NW2d 557 (2000). When the trial court accepted that Younger was truly remorseful at his original sentencing, it did not rely on inaccurate information, but rather a subjective assessment that the trial court questioned in retrospect after receiving *new* information. See *People v Wybrecht*, 222 Mich App 160, 173-174; 564 NW2d 903 (1997) (distinguishing between drawing a conclusion about a defendant's character and the underlying facts upon which that conclusion was based). That new information did not exist at the time of the original sentencing, so it could not have been inaccurate. It is "axiomatic . . . that the trial court cannot invalidate its sentences by simply changing its mind." *Id*. at 168-169. Younger's sentence was not invalid because the trial court changed its mind about whether Younger's remorse was sincere.

Nevertheless, Younger's original sentencing guidelines calculations contained an error because prior record variable (PRV) 6 was originally scored at five points, which is proper if a defendant was "on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor," MCL 777.56(1)(d). Younger provided evidence that he was not on probation after the original sentencing, resulting in the trial court correcting Younger's sentencing guidelines accordingly at resentencing. That correction reduced his total PRV score from 70 to 65 points, which did not change his PRV level, MCL 777.67, and therefore did not affect his minimum sentencing guidelines range. A defendant is entitled to resentencing if a guidelines variable scoring error changes the sentencing guidelines range. *People v Jackson*, 487 Mich 783, 792-795; 790 NW2d 340 (2010). And resentencing is *not* required if a scoring error does not alter the sentencing guidelines range. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Thus, a sentence is not invalid merely because there was an error in a guidelines variable score. However, the trial court's commentary at Younger's original sentencing and at resentencing reflects that it crafted its original 18-month minimum sentence in part because it believed that Younger had been on probation. Thus, his sentence was "based on inaccurate

-2-

information" even if that error did not affect his guidelines minimum range because it was part of the trial court's proportionality determination.

Defendants must be sentenced on the basis of current information. *People v Triplett*, 407 Mich 510, 513-516; 287 NW2d 165 (1980). *Triplett* specifically addressed the importance of an up-to-date presentence investigation report (PSIR), but "the manner in which the pertinent facts are compiled is not as crucial as is the content or accuracy of this information after it reaches the hands of the trial judge." *People v Hemphill*, 439 Mich 576, 581-582; 487 NW2d 152 (1992). Unpublished cases have emphasized that, while an updated PSIR might not be mandatory at resentencing, trial judges at resentencing must consider up-to-date information. *People v Stoltz*, unpublished per curiam opinion of the Court of Appeals, issued July 20, 2023 (Docket No. 363425), p 9; *People v Calloway (After Remand)*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2020 (Docket No. 349870), p 6; *People v Croff*, unpublished per curiam opinion of the Court of Appeals, issued October 23, 2014 (Docket No. 314409), p 5. While these cases are not binding, the principles they espouse are consistent with the Michigan Supreme Court's emphasis on the need for sentences to be based on accurate and current information, so we find their reasoning persuasive. *Johnson v Mich Assigned Claims Plan*, ___ Mich App ___, ___ n 3; ___ NW3d ___ (2024) (Docket No. 368048); slip op at 5 n 3. Because the trial court was *already* authorized to resentence Younger, the trial court was permitted to consider up-to-date information in crafting a new sentence.[2]

## II. VALIDITY OF REVISED SENTENCE

Younger argues that his revised sentence is invalid because it was vindictive, disproportionate, and based on an erroneous finding that he violated the no-contact order. We agree that the record does not support the trial court's determination that Younger violated the no-contact order, but the record does not reflect vindictiveness, and Younger fails to show that the sentence is disproportionate.

## A. ERRONEOUS FINDINGS OF FACT

We first note that Younger does not challenge the trial court's determination that his intemperate remark was threatening in its general nature, which would, in any event, be the kind of credibility assessment to which we would defer. *People v White*, 331 Mich App 144, 150; 951 NW2d 106 (2020). The trial court did not identify which provision of the no-contact order it

---

[2] We therefore need not consider defendant's claim that he received ineffective assistance of counsel. Counsel is not ineffective for failing to raise a meritless or futile objection. *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 14. We further reiterate that the trial court's changed opinion of Younger's remorsefulness on the basis of his alleged statement to his wife did not authorize it to resentence Younger sua sponte. Rather, resentencing was permitted because of the trial court's misconception regarding Younger's probation status.

believed that Younger violated.  The provisions of the no-contact order that are relevant to this appeal state:

> q.  Do not harass, intimidate, beat, molest, wound, stalk, threaten, or engage in other conduct that would place any of the following persons or a child of any of the following persons in reasonable fear of bodily injury: spouse, former spouse, individual with whom the defendant has a child in common, resident or former resident of the defendant's household.
>
> r.  Do not assault, harass, intimidate, beat, molest, wound, or threaten the following person(s): [Complainant]
>
> s.  Do not have (or cause any third party to have) any direct or indirect contact with the following person(s): (Note: This condition also applies while the defendant/juvenile is in custody.)  [Complainant]

We presume that Younger's remark might have placed complainant in reasonable fear of injury or that it would have threatened complainant if complainant had been aware of the statement.  But the only evidence in the record reflects that complainant was not present for, in the vicinity of, or even aware of Younger's remark.  Thus, to the extent the trial court may have found that Younger directly threatened or contacted complainant in violation of prohibition (q) or (r), the trial court clearly erred because nothing in the record could support such a finding.  See *People v Chaney*, 327 Mich App 586, 591; 935 NW2d 66 (2019) (when there was no evidence of the factual basis for the trial court's scoring of a sentencing guidelines variable, "the trial court's finding was clearly erroneous, i.e., not supported by a preponderance of the evidence").

The record also does not support a finding that Younger violated prohibition (s) of the no-contact order.  Again, there is no evidence that Younger had any direct contact with complainant.  However, complainant's absence from the scene does not preclude the possibility that Younger tried to cause a third party to have contact with complainant.  Defense counsel attempted to explain to the trial court that she believed Younger "was indicating to [his wife] that their daughter needs to—she needs to let their daughter know that—" before being cut off by the trial court.  The trial court also believed that "[t]here was a message that was being sent."  Thus, the trial court might have found that Younger was attempting to transmit a message through his wife.  But the evidence only supports a finding that Younger might have intended to have indirect contact with *his daughter* through a third party.  Younger's daughter is not identified as a protected individual under prohibition (s).  Thus, the trial court also clearly erred if it found that Younger violated prohibition (s).  On this record, the trial court clearly erred by finding that Younger violated the no-contact order, and, because it crafted its 24-month minimum sentence partly on the basis of that error, Younger's revised sentence is invalid.

## B.  VINDICTIVENESS

Younger argues that his revised sentence was vindictive.  We disagree.

If a defendant is resentenced by the original sentencing judge to a longer sentence for the same crime, a presumption arises that the new sentence was vindictive.  *People v Mazzie*, 429

Mich 29, 35 (opinion by BRICKLEY, J.), 37 (LEVIN and CAVANAGH, JJ., concurring); 413 NW2d 1 (1987). The presumption may be overcome if the trial court articulates reasons for the increase and the increase bears "a reasonable relationship to the new information." *Id*. at 35-37. An increased sentence is not vindictive if the increase is based on an error by the trial court. *People v Lino*, 213 Mich App 89, 99; 539 NW2d 545 (1995), overruled in part on other grounds by *People v Carson*, 220 Mich App 662, 673-674; 560 NW2d 657 (1996).

Younger argues that because he did not actually violate the no-contact order or threaten anyone, the trial court's perception that he was not truly remorseful did not justify a higher sentence, let alone a six-month increase. But Younger primarily takes issue with whether the trial court was correct, which is irrelevant to whether the trial court's sentence was vindictive. The trial court at Younger's original sentencing was concerned about Younger's potential for rehabilitation and deterrence, but it imposed a sentence of 18 months in large part because it chose to accept that Younger was truly remorseful. The trial court articulated reasons for increasing Younger's sentence by reconsidering the sincerity of that remorse. Our Supreme Court has held that a sentencing judge may consider whether a defendant testified falsely for purposes of assessing the defendant's potential for rehabilitation. *People v Adams*, 430 Mich 679, 689, 693; 425 NW2d 437 (1988). While Younger did not testify, the trial court clearly believed that Younger was being deceitful and manipulative, and *Adams* suggests that the trial court did not err by doubting Younger's potential for rehabilitation on the basis of his deceit. Additionally, the trial court's belief that Younger violated its no-contact order and threatened complainant would, if true, suggest that Younger was indeed dangerous and that there was a greater need to protect society from him. Irrespective of whether the trial court was correct, its articulated reasons for the increased sentence are reasonably related to a six-month increase in his minimum sentence.

## C. PROPORTIONALITY

Younger argues that a minimum sentence of 24 months is disproportionate because the trial court's reassessment of his remorsefulness did not justify "a higher sentence, let alone a one-third increase" to the top of his guidelines range. But Younger fails to identify any unusual circumstances that render his ultimate 24-month minimum sentence disproportionate. *People v Ventour*, 349 Mich App 417, 430; 27 NW3d 660 (2023). This issue is therefore abandoned. *In re Conservatorship of Murray*, 336 Mich App 234, 260-261; 970 NW2d 372 (2021).

## III. PRIOR RECORD VARIABLES

Younger argues that the trial court erroneously scored PRV 1 at 25 points, which is appropriate if "[t]he offender has 1 prior high severity felony conviction," MCL 777.51(1)(c), because none of his prior felonies are "high severity." A "prior high severity felony conviction" is defined as

> a conviction for any of the following, if the conviction was entered before the sentencing offense was committed:
>
> (a) A crime listed in offense class M2, A, B, C, or D.

-5-

(b) A felony under a law of the United States or another state corresponding to a crime listed in offense class M2, A, B, C, or D.

(c) A felony that is not listed in offense class M2, A, B, C, D, E, F, G, or H and that is punishable by a maximum term of imprisonment of 10 years or more.

(d) A felony under a law of the United States or another state that does not correspond to a crime listed in offense class M2, A, B, C, D, E, F, G, or H and that is punishable by a maximum term of imprisonment of 10 years or more. [MCL 777.51(2).]

Because Younger's prior convictions were all from Arizona, one of them must satisfy either MCL 777.51(2)(b) or (d) to be a high-severity felony conviction for purposes of PRV 1. Neither Younger's PSIR nor Younger's publicly available record on the Arizona Department of Corrections website[3] identifies which Arizona statutes Younger violated, although both confirm that he had at least four prior felonies, and the trial court did not specify which offense supported PRV 1. Younger offers, for the first time on appeal, documentation purporting to identify the statutes underlying at least some of those convictions, but parties generally may not expand the record on appeal, *People v Gingrich*, 307 Mich App 656, 659 n 1; 862 NW2d 432 (2014), and the trial court is better situated to address the factual question of what Younger's offenses were, *In re Martin*, 200 Mich App 703, 717-718; 504 NW2d 917 (1993). We therefore decline to consider whether any of Younger's prior felonies should be considered high severity.

We do, however, observe a discrepancy in Younger's sentencing guidelines calculation. Specifically, the trial court scored PRV 2 at 30 points, which is proper if "[t]he offender has 4 or more prior low severity felony convictions." MCL 777.52(1)(a). The Legislature intended to distinguish between high-severity and low-severity felonies, *People v Crews*, 299 Mich App 381, 388-390; 829 NW2d 898 (2013), which implies that any particular felony may be scored under only one of PRV 1 *or* PRV 2. Thus, for the trial court to have properly scored PRV 2 at 30 points *and* scored PRV 1 at 25 points, Younger must have had at least *five* prior felony convictions. Accordingly, irrespective of the severity of Younger's offenses, the trial court appears to have impermissibly double-counted one of them. Because the trial court's decision to score PRV 1 at 25 points and PRV 2 at 30 points followed an off-the-record discussion, the record does not reveal what information the trial court relied on or what factual findings it made. See *In re Monier Khalil Living Trust*, 328 Mich App 151, 156; 936 NW2d 694 (2019) (the trial court conducted proceedings "off the record, hampering our review"). This discrepancy should be corrected or explained on the record on remand, when Younger may also present his challenge to whether any of his prior convictions constituted high-severity felonies.

---

[3] Arizona Corrections Database, *Print Inmate Ronnie Younger*, < https://inmatedatasearch.azcorrections.gov/PrintInmate.aspx?ID=147713 > (accessed August 7, 2026).

## IV. REASSIGNMENT ON REMAND

Younger lastly requests reassignment to a different judge on remand. While the transcript of the resentencing hearing reflects that the judge was upset by Younger's perceived insincerity, it also reflects that the judge was conscientious and dedicated to accuracy, including not only correcting the court's mistake as to Younger's probation status but ensuring that all parties had an opportunity to listen to the recording of Younger's statement and verify whether the trial court heard Younger correctly in the recording. The trial court gave Younger an opportunity to explain himself, even if the trial court did not believe that explanation. Reassignment may be proper if the sentencing judge expresses hostility, bias, and incredulity toward a defendant, *People v Walker*, 504 Mich 267, 286-287; 934 NW2d 727 (2019), but we find no reason on the record to believe that the trial court would be unable to correct its own errors on remand. *People v Dilling*, 222 Mich App 44, 56; 564 NW2d 56 (1997). On this record, we cannot conclude that the trial judge would have difficulty disregarding any predetermined conclusions, that reassignment would be necessary to preserve the appearance of justice, or that reassignment would not entail a disproportionate waste and duplication of effort. See *People v Evans*, 156 Mich App 68, 72; 401 NW2d 312 (1986). We therefore deny his request for reassignment on remand.

Younger's sentence is vacated, and the matter is remanded for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ Mariam S. Bazzi
/s/ Andrew J. Lievense